Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LENORE ALBERT, an individual;

     Plaintiff(s),

vs.

ANTHONY TROY WILLIAMS, an individual; COMMON LAW OFFICES OF AMERICA; GEORGE OLIVO, an individual; SHERI MOODY, an individual; VALERIE LOPEZ, an individual; CYNTHIA L. BROWN, an individual; SHERRY HERNANDEZ, an individual; MONICA JONES, an individual; PAM RAGLAND, an individual; CITIBANK, N.A.; GREG DIAMOND, an individual; BILLIE RENE POWERS, an individual; WILLIAM WAGENER, an individual; KARIN HUFFER, an individual; MARY SMITH, an individual; JOANNE KENNEDY, an individual; DEVIN LUCAS, an individual; ORANGE COUNTY SUPERIOR COURT; STATE BAR EMPLOYEE, an individual; STATE BAR OF CALIFORNIA; TIMOTHY BYER, an individual; ALEX HACKERT, an individual; HON. YVETTE ROLAND, an individual; MARICRUZ FARFAN, an individual; CAITLIN ELEN-MORIN, an individual; STEVE BALLARD, an individual; CATHERINE OLSEN, an individual; NIRA WOODS, an individual; and DOES 1 through 50, inclusive,

    Defendants.

CASE NO. CV13-01934 DDP-AJW

## COMPLAINT

### [Demand for Jury Trial as to Part]

1. 42 USC 1983
2. Defamation
3. False Light
4. Extortion
5. RICO Violations
6. UCL 17200

[This pleading is being drafted and filed on an EMERGENCY BASIS to seek IMMEDIATE INJUNCTIVE RELIEF and will need to be amended – it is being filed to give the court some notice as to what is occurring and for service on Defendant State Bar at oral argument today in state appeal G053956 – Ex parte request will be filed on 3/22/18]

- Case related to G053956 and related to personal bankruptcy filed by Lenore Albert on 2/20/18 18-bk-10548; related to Ford Credit v Albert; JPP v Albert; TRO Albert v Olivo; Albert v State Bar 14-cv-01905-DOC

**1**

## COMPLAINT

Albert v Williams, et al

Plaintiff LENORE ALBERT (referred to as "plaintiff" or "plaintiffs"), now brings this action against defendants and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiff and are within her personal knowledge:

**JURISDICTION**

1.     The Court has subject matter jurisdiction of this action under 28 U.S.C. §1331.

**PARTIES**

2.     Plaintiff, Lenore Albert, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

3.     Defendant, Anthony Troy Williams, who at all times mentioned herein relevant to this complaint, was an individual residing in Broward County, Florida.

4.     Defendant, George Olivo, who at all times mentioned herein relevant to this complaint, was an individual residing in Wasco prison in California.

5.     Defendant, Sheri Moody, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

6.     Defendant, Cynthia L. Brown aka Cindy Brown, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

7.     Defendant, Valerie Lopez, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

8.     Defendant, Steve Ballard, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

9.     Defendant, Catherine Olsen, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

10.     Defendant, Nira Woods, who at all times mentioned herein relevant to this complaint, was an individual residing in Los Angeles County, California.

11.     Defendant, Sherry Hernandez, who at all times mentioned herein relevant to this complaint, was an individual residing in Los Angeles County, California.

**2**

**COMPLAINT**

Albert v Williams, et al

12.     Defendant, Monica Jones, who at all times mentioned herein relevant to this complaint, was an individual residing in Clark County, Nevada.

13.     Defendant, Pam Ragland, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

14.     Defendant, Greg Diamond, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

15.     Defendant, Vern Nelson who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

16.     Defendant, Billie Rene Powers aka Rene Powers, who at all times mentioned herein relevant to this complaint, was an individual residing in Orange County, California.

17.     Defendant, William Wagener, who at all times mentioned herein relevant to this complaint, was an individual residing in Santa Barbara County, California.

18.     Defendant, Karin Huffer, who at all times mentioned herein relevant to this complaint, was an individual residing in Clark County, California.

19.     Defendant, Common Law Offices of America, who at all times mentioned herein relevant to this complaint, was an enterprise defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" operating in California.

20.     Defendant, Citibank N.A., who at all times mentioned herein relevant to this complaint, was a business entity operating in California.

21.     Defendant, Equal Access Advocates, who at all times mentioned herein relevant to this complaint, was a business entity operating in Colorado Springs, Colorado.

22.     Defendant, Mary Smith, who at all times mentioned herein relevant to this complaint, was a DOE individual whom true identity needs to be discovered.

23.     Defendant, Joanne Kennedy, who at all times mentioned herein relevant to this complaint, was an individual residing in Pennsylvania.

24.     Defendant and Real Party in Interest Orange County Superior Court is a government agency and only being sued for injunctive relief to the extent needed to bar the court from the practice

**3**

**COMPLAINT**

Albert v Williams, et al

of allowing extremists to rule ex parte proceedings through an ADA scam that they have been running for the past year.

25.     Defendant and Real Party in Interest State Bar of California is a government agency and only being sued for injunctive relief to the extent needed to bar the agency from violating Plaintiff's constitutional rights and continuing the use of sovereign citizen extremists to target Plaintiff.

26.     Defendant, Timothy Byer, who at all times mentioned herein relevant to this complaint, was an individual residing in California and is being sued in his individual capacity as an employee at the State Bar.

27.     Defendant, Alex Hackert, who at all times mentioned herein relevant to this complaint, was an individual residing in California and is being sued in his individual capacity as an employee at the State Bar.

28.     Defendant, Caitlin Elen-Morin, who at all times mentioned herein relevant to this complaint, was an individual residing in California and is being sued in his individual capacity as an employee at the State Bar.

29.     Defendant, judge Yvette Roland, who at all times mentioned herein relevant to this complaint, was an individual residing in California and is being sued in her individual capacity as an employee at the State Bar.

30.     Defendant, Maricruz Farfan, who at all times mentioned herein relevant to this complaint, was an individual residing in California and is being sued in her individual capacity as an employee at the State Bar.

31.     Defendant State Bar Employee is an individual being sued as a Doe Defendant who is the person that actually posted derogatory information on Plaintiff's member page and was responsible for giving Plaintiff Notice of her State Bar status, and is being sued in his or her individual capacity and is believed to reside somewhere in California.

32.     Third party Kimi VanDyke, resides in Santa Barbara County, California.

33.     Third party, Donna Anderson, Township, New Jersey and runs the www.LoveFraud.com website.

**4**

**COMPLAINT**

Albert v Williams, et al

34.     Third party, Lovefraud Education and Recovery a nonprofit located in Atlantic City, New Jersey.

35.     Plaintiff does not know the true name and capacity of the defendants DOES 1 through 50, inclusive, and as such names said defendants by such fictitious names. Plaintiff will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

36.     Plaintiff is informed and believes and alleges thereon that each defendant is responsible in some manner for the occurrences alleged in this complaint, and that plaintiff's damages were proximately caused by the defendants.

37.     Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

38.     Additionally, plaintiff is informed and believes and alleges thereon that each defendant conspired with their co-defendants, acted in concert therewith, assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

**OVERALL SCHEME**

39.     Defendants conspired to "take down" and "destroy" plaintiff Lenore Albert by using paper terrorism, mass bullying, violence and exaggeration of their own education and experience. Some examples include but are not limited to contacting plaintiff's opposing counsel, their clients and her clients in all cases she handled or currently handling to try to persuade them to join their plan.  Their plan to discredit Ms. Albert included making multiple online testimonials that Ms. Albert was a racist that targeted oppressed people and stole their homes or life savings. They would represent that they personally knew this by pretending to be either her client, her employee or other close relationship and engaged powerful government and private entities to conspire with them. They flooded the California State Bar with complaints by clients, opposing counsel and their clients. They also filed a series of Temporary Restraining Orders against her in Orange County and Los Angeles county which worked a dual purpose to keep her buried in paper and also gave them the ability to pull Ms. Albert's entire

5

**COMPLAINT**

Albert v Williams, et al

history of cases she handled in both courts – for free. A third part of their plan was to cut off all money sources from her. A fourth part of their plan that they executed was to open up investigations on her with the IRS, financial institutions, lenders, the State Franchise Tax Board, the OC Sheriff, Huntington Beach Police Department, and any other organization that would listen. If a client would not turn on Ms. Albert, they would attempt to get that case dismissed against the client. According to George Olivo, they had 15 attorneys assisting them in their pursuit. With the laptop that they stole from the office along with Ms. Albert's files, work product, case list, her birth certificate, social security card, office access card, and keys, the Defendants had everything they needed. By taking the laptop and files, now these Sovereign Citizen extremists had a ton of legal research, pleadings, motions, and appellate briefs that they could use as templates to further their cause in the legal system and the homeowner rescue scams that they were running. The group also was able to de-link any article that held Ms. Albert's accomplishments in a positive light. Their other part of the plan was to shame, humiliate, disparage and create a fake court record by appearing in court and either filing or saying shocking things so that they could create a book and support their testimonials with court records. They also redirected her mail through the US Post Office and impersonated her to shut down any investigations she would ask agencies to open, including but not limited to investigations by the US Postal inspector's office.

40.     Defendants obtained Ms. Albert's trust in or about 2013 and she held free classes for a chore group of them on the weekends.  Shortly thereafter Ms. Albert's back window was blown out on or about September 25, 2013, her computers were receiving strange viruses, and clients were reporting alleged threats against them. By April 2014, her laptop, files, car keys, office keys, and building access pass were stolen by Norma White. By July 2014, George Olivo had commandeered Ms. Albert's car, stole/lost her last set of car keys, threatened to have kidnapped her dog, tried to assault her with a statue in her office, and threatened to destroy her and any clients that stood by her. By April 2015, Ms. Albert had received multiple pranks at her home, instigations of police going to her office upon fake false police reports, threats of Common Law juries and militia/military men with guns that were going to shoot on sight if they saw her driving down the road and she was ambushed in the courthouse parking lot by six of them who had cameras instead of guns as they had accomplished in taking her vehicle. By July 2016 the group succeeded in getting Ms. Albert before disciplinary authority of the State Bar. By July 2017 the group succeeded in worming their way into the civil courtroom structure under the rubric

**6**

**COMPLAINT**

Albert v Williams, et al

of ADA advocacy and were successful in holding ex parte hearings with judges, and getting Ms. Albert removed from depositions, hearings and trials without due process of law.

41.     Interference in plaintiff's personal and business affairs included, but not limited to filing false SAR reports to get plaintiff's bank accounts terminated while Citibank froze those assets; redirecting mail being served on opposing parties and counsel and even swapping out the contents in the mail (tampering with US mail); making false records in court/legal proceedings; pretending to be officers or consulates; creating fake media for the internet to further their goals such as posing with officers to then make later representations about the validity of their scams; filing false sovereign citizen deeds of trusts, liens and notes; interfering in Plaintiff's candidate runs for election in Assembly 72 race, State Bar, CDP Chair race and most recently the D.A. race. Back dating suspension postings and/or online computer hacking; anniversary computer viruses/hacking every fall.

42.     Clients who received well-compensated settlement agreements threw away their cases and then cut Ms. Albert out of the settlement proceeds while retaining over seven figures in real property value plus cash such as Felipe Gonzalez, Steve Ballard, Amalia Pasillas, and Helen Galope. Other clients joined the extremists and threw away their live cases like Soledad Corona, Marvin Baldwin and Irma Escobar and turned on Ms. Albert before everything was even complete forcing her hand. Yet, other clients such as Bonnie Kent, Nira Woods and David Bitzer, were already predisposed to conning people out of money and saw Ms. Albert as a soft mark because they already knew all about the extremists and could see what a target they set up with the State Bar.

43.     In radicalizing other people to join in, Defendants threatened Ms. Albert's clients or told the other people that they were victims or knew victims of Ms. Albert and then told them a story that the person could relate to. Some institutions such as Ford Credit, paid the extremists for their purported help. This led to a series of lawsuits that Ms. Albert filed in order to defend herself as the attacks unfolded including obtaining a civil restraining order against George Olivo, filing a defamation action in 2014 against Pam Ragland, Karen Rozier, Maegan Nikolic, David Seal, Esq., Mitchell Hannah, Esq., Devin Lucas, Esq., George Olivo and Norma White; a civil rights action against the State Bar and Huntington Beach police department, and a Rees Levering and IIED cross-complaint against Ford Credit.

**FACTUAL ALLEGATIONS**

**7**

**COMPLAINT**

Albert v Williams, et al

44.     Plaintiff is informed and believes and alleges thereon that US Storage is the product of a joint venture by which Public Storage was a participant in forming in 1985.

45.     Defendants were members of a nationwide conspiracy to shut down Lenore Albert's law office through a pattern of racketeering activity—including extortion under the Hobbs Act—in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) chapter of the Organized Crime Control Act of 1970, 18 U. S. C. §§ 1961–1968. Plaintiff alleges that Defendants conspired to use threatened or actual force, violence, or fear to induce law firm employees, lawyers, and clients to give up their jobs, their right to practice law, and their right to obtain legal services; that the conspiracy injured Plaintiff and her law firms' business and property interests.

46.     The Defendants mainly moved amongst four family organizations: Common Law Offices of America ("CLOA"); the Cal 18; Action for Justice ("AXJ"); and Occupy Fights Foreclosures ("OFF") and those enterprises are each a racketeering enterprise. In or about 2017 the defendants started and/or joined a new racketeering enterprise: Equal Access Advocates.

47.     The Defendants conspired with, incited, directed, worked as a conduit through the California State Bar, the Orange County Superior Court, Citibank, the Orange Juice Blog, Ford Motor Credit Company, LLC Friendly Ford, and the Orange County Board of Supervisors.

48.     Plaintiff alleges that defendants used phishing techniques online to get others to contact them so that they could find people willing to play 'victim' to pit against Ms. Albert. The phishing techniques would start out on social media posts or the Orange Juice Blog run by Greg Diamond and Vern Nelson.

49.     Plaintiff alleges that Defendants filed false complaints, threatened others to do the same, used physical threats of violence, created dangerous situations, and publicly disparaged and bullied Ms. Albert, then tried to work their way into the judicial system in order to achieve their objectives.

**FIRST CAUSE OF ACTION**

**DEFAMATION PLUS AKA 42 USC 1983**

**Against Maricruz Farfan, Alex Hackert, Timothy Byer, Hon. Yvette Roland, State Bar Employee and Does 1 through 50**

**COMPLAINT**

Albert v Williams, et al

50. Plaintiff incorporates paragraphs 1 through 45 and the Exemplary Damages allegations as though fully incorporated herein.

51.     On or about March 16, 2018 a small portion of Ms. Albert's member page at www.calbar.ca.gov was changed which read "effective date 2/14/18" "suspension" and "Not eligible to practice law."

52.     These statements were not true.

53.     Plaintiff contacted judge Roland, her assistant Angela Carpenter, Timothy Byer, Alex Hackert, and Maricruz Farfan asking them why the website said this or why she would learn of this from an Orange Juice Blog post by Vern Nelson that was sent to her rather than the State Bar.

54.     None of the State Bar employees responded.

55.     The following Monday, Ms. Albert followed up and again there was no response. After Ms. Albert sent a third request to Maricruz Farfan, at 4:30PM on Monday March 19, 2018 she replied merely that they had no control over what was posted on the website and that they had received an order dated 2/14/18 from the California Supreme Court and that was all she knew.

56.     The order dated 2/14/18 from the California Supreme Court which Ms. Albert sent to the State Bar merely stated that the petition for rehearing was denied – and nothing more.

57.     On March 19, 2018 Ms. Albert demanded a retraction but defendants failed and refused to retract the statements on the State Bar website.

58. Others understood that these statements were about Plaintiff because this was her membership page on the State Bar website.

59. Due to the facts and circumstances known to the [listener(s)/reader(s)] of the statement(s), they tended to injure Plaintiff in her occupation and race for District Attorney. It exposed her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

60. Defendant failed to use reasonable care to determine the truth or falsity of the statement(s) about the suspension and effect on Ms. Albert's law practice, her clients or the District Attorney's race.

61. Ms. Albert explained to the State Bar employees that she never received any notice from anyone that she was going to be suspended on February 14, 2018 as would be constitutionally required. Also if she had been suspended on that date, the thirty day suspension would have been over by

**9**

**COMPLAINT**

Albert v Williams, et al

March 19, 2018. Additionally, she had filed for Bankruptcy protection which had an automatic stay and discharge of the discovery sanctions that were reduced to liens and/or barred the State Bar from attempting to collect on that debt or take such actions without moving for relief from stay. Yet, Defendant has failed and refused to retract or correct the statements made on the State Bar website on March 16, 2018.

62. As a result, Plaintiff suffered harm to her property, business, profession or occupation including money spent as a result of the statements. She also suffered public humiliation, reputation damage, shame, and emotional distress including mental suffering, anxiety and humiliation.

63. The statements made by Defendants were a substantial factor in Plaintiff's harm.

64. In making the statement(s), Defendants acted with hatred or ill will toward her, showing these particular defendants willingness to vex, annoy, or injure her.

65. Plaintiff is informed and believes and alleges thereon Defendants are intentionally defaming her in retaliation to an upcoming appellate oral argument in Albert v State Bar set for March 21, 2018, thus entitling her to punitive damages.

66. Alternatively, Defendant had no reasonable grounds for believing the truth of the statement(s) they made.

67. Plaintiff is entitled to injunctive relief.

68. Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

69. The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**SECOND CAUSE OF ACTION**

**42 USC 1983**

**Against Defendants State Bar Employee, State Bar of California, Yvette Roland, Alex Hackert, Timothy Byer and Maricruz Farfan**

**10**

**COMPLAINT**

Albert v Williams, et al

70. Plaintiff incorporates paragraphs 1 through 41 and the Exemplary Damages allegations as though fully incorporated herein.

71. Defendant State Bar of California, State Bar Employee, Yvette Roland, Alex Hackert, Timothy Byer and Maricruz Farfan were, at all times mentioned in this complaint, acting under color of state law. The individuals were acting in their individual capacity.

72. Defendants so named did not give Plaintiff notice that the State Bar suspended her license to practice law on February 14, 2018 and failed to take the notation of suspension off of the State Bar website on or after March 16, 2018 (thirty days later).

73. Defendants so named did not treat Plaintiff equally with other licensed attorneys and targeted her each time she ran for election.

74. Plaintiff is informed and believes and thereon alleges that she was subjected to a violation of her right to equal protection and notice and due process under the First and  Fourteenth Amendments to the United States Constitution], as a result of the customs, practices, and policies of defendant State Bar of California.

75. Plaintiff is informed and believes and alleges thereon that the State Bar's *customs, practices, and policies of conducting itself above-the-law led to the violation of the plaintiff's rights*. For example it has on three occasions from 2015 to the present in three different races published derogatory information about Plaintiff as soon as she started her election campaigns.

76. The customs, practices, and policies of defendant State Bar described in this complaint amounted to deliberate indifference to the rights of persons, such as the plaintiff, who are attorneys.

77. As a direct and proximate result of the customs, practices, and policies of defendant State Bar, described in this complaint, plaintiff has suffered injury, loss, and damage, including loss of her license, loss of business, emotional distress, pain, and suffering.

**THIRD CAUSE OF ACTION**

**42 USC 1983**

**Against Defendants State Bar Employee, State Bar of California, Yvette Roland, Alex Hackert, Timothy Byer and Maricruz Farfan**

78. Plaintiff incorporates paragraphs 1 through 73 as though fully incorporated herein.

**11**

**COMPLAINT**

Albert v Williams, et al

79. Defendant State Bar of California, State Bar Employee, Yvette Roland, Alex Hackert, Timothy Byer and Maricruz Farfan were, at all times mentioned in this complaint, acting under color of state law. The individuals were acting in their individual capacity.

80. There is no provision at the State Bar to seek this type of relief and as such, there is no state action.

81. Defendant State Bar of California is targeting Plaintiff with Cal Bus & Prof Code 6103 Disciplinary Charges in an unconstitutional manner because she had a good faith belief she did not have to pay the discovery sanction for her clients. For example, the State Bar prosecuted Ms. Albert after Helen Koshak did not make a payment on a discovery sanction issued in favor of 10675 S Orange Park Blvd, LLC, Francis B Lantieri and Gary Schneider in her Unlawful detainer case.  The discovery motion did not notice Ms. Albert as a party that the UD plaintiffs were seeking sanctions from. In fact, the discovery was served on Ms. Koshak directly because it occurred while Ms. Koshak was in pro per. CCP § 2023.040 does not allow sanctions against a party not noticed in the motion. Additionally, the commissioner who signed the orders later recused himself making his prior orders void. Finally, at the time the State Bar initiated prosecution was the first attempt of the UD plaintiffs to collect wherein they recorded a series of liens against Ms. Albert in the Orange County Recorder's office – 3 years later. The State Bar failed and refused to determine if the document was even valid.

82. The State Bar also started to prosecute Ms. Albert after she did pay Bonnie Kent's discovery sanctions of $800.00 to Devin Lucas on the grounds that Ms. Albert paid Devin Lucas too much by giving him $875.00 on or about March 16, 2016. These are nothing more than a forced payment of debt to a third party by the State Bar where the State Bar also makes a hefty flat fee of approximately $20,000.00 for each collection effort that is opposed.

83. The State Bar failed to allow plaintiff "to exercise his or her right to disobey a court order the attorney believes is unconstitutional." *Canatella v Stovitz* (ND CA 2005) 365 F. Supp2d 1064, 1073-1074.

84. The barrage of State Bar complaints against Ms. Albert were generated by a handful of sovereign citizen extremists who filed them on their own behalf and actively recruited others to file them against Plaintiff, too. Although the State Bar knew that these extremists were targeting Plaintiff, the

**12**

**COMPLAINT**

Albert v Williams, et al

State Bar conspired with, acted in concert with, and/or acquiesced in the extremists conduct which resulted in the State Bar deluging a swarth of paper terrorism upon Plaintiff's office.

85. Plaintiff is informed and believes and thereon alleges that she was subjected to a violation of her right to be free from government oppression, notice and due process and the Cal Bus & Prof Code 6103 statute as applied is vague and overbroad under the First and  Fourteenth Amendments to the United States Constitution], as a result of the customs, practices, and policies of defendant State Bar of California.

86. Plaintiff is informed and believes and alleges thereon that the State Bar's *customs, practices, and policies of conducting itself above-the-law led to the violation of the plaintiff's rights*.

87. The customs, practices, and policies of defendant State Bar described in this complaint amounted to deliberate indifference to the rights of persons, such as the plaintiff, who are attorneys representing the average, every day person in civil cases.

88. As a direct and proximate result of the customs, practices, and policies of defendant State Bar, described in this complaint, plaintiff has suffered injury, loss, and damage, including loss of her license, loss of business, emotional distress, pain, and suffering].

## FOURTH CAUSE OF ACTION

## DEFAMATION

**Against Greg Diamond, Pam Ragland, Maegan Donovan Nikolic, Joanne Kennedy, Mary Smith, and Vern Nelson**

89. Plaintiff incorporates paragraphs 1 through 84 as though fully incorporated herein.

90. Does 1 through 50 aided and abetted Greg Diamond in the defamation laid out below.

91. By way of background, in or about September 2011 Plaintiff received a call to action to ask homeowners facing foreclosure to meet at certain times, dates and places to speak on particular Wall Street issues in Oakland and San Francisco, California. Later, a similar call to action was made for Los Angeles, California. This idea was to give a soapbox to struggling groups of the middle class. Labor unions across the United States assisted in sponsoring this effort. The first direct action took place in New York City. Out of that sprung the "Occupy" movement. It was a planned roll-out over a six-week period.

**13**

**COMPLAINT**

Albert v Williams, et al

92. Defendants George Olivo, Vern Nelson and Greg Diamond, Esq. created, assisted, participated in and/or took credit for creating, assisting and/or participating in an unplanned action called Occupy Irvine.

93. Greg Diamond, Esq. and Vern Nelson reported on some of the group's activities in a blog at www.Orangejuiceblog.com.

94. Around this time period, Joe Roberts, Esq. approached plaintiff and asked if she would partner with him to run a series of 15 USC 1641g putative class actions with him. He had gathered evidence from a database to support an assertion that the lenders were playing hide-and-seek in the US Bankruptcy courts as to the true identity of the creditor when homeowners were being foreclosed upon.

95. One of the client's referred from Joe Roberts' office was Trang Che.

96. Trang Che agreed to try to seek damages relief under a relatively new TILA statute 15 USC 1641(g) called the "Barbara Boxer" amendment. Ms. Albert filed suit on her behalf in a putative class action on or about September 21, 2011.

97. Plaintiff was assured by attorney Joe Roberts that Ms. Che was counseled and advised that this statute would most likely not stop the foreclosure process or save her from eviction. Mr. Roberts represented that Ms. Che was likely going to surrender her home because she was not going to fight the UD eviction.

98. On or about December 11, 2011 without the knowledge of Plaintiff, Vern Nelson wrote a story about Trang Che on the Orange Juice Blog.

99. The story published by Vern Nelson stated:

   a. "Trang has certainly been comforted by our ongoing presence, but what we are offering her – and other homeowners who request our assistance – is support, solidarity, knowledge, expertise. We have lawyers in our ranks – and not just Diamond!"

   b. "But we know there are hundreds more of you out there, dozens of Orange County residents being foreclosed and evicted every day. And if you want our help, you can contact us here. And if we think we can help you, we'll be there for you."

**14**

**COMPLAINT**

Albert v Williams, et al

c. "We want you to know that, even when our tent village is gone, we Occupy Orange County more than ever. We want you to know we are your True Militia. We are the Tea Party for Thinking."

100.    Plaintiff became extremely concerned about slanderous statements being made and contacted Joe Roberts on December 21, 2011 after she was made aware of the blog posting. Neither Greg Diamond nor anyone from the Occupy Irvine contingent was working on Trang Che's legal case and Plaintiff was not representing Trang Che in unlawful detainer or otherwise to protest her eviction or foreclosure sale that had previously occurred.

101.    Joe Roberts reassured Plaintiff that Trang Che knew that Plaintiff was not representing her to get her house back or stop an eviction. He stated that he vetted Trang Che and she actually worked for him as a real estate agent.

102.    In late December 2011, Joe Roberts, Esq. then wrote a comment on the article which Greg Diamond replied "Joe, do you mind if I write you at your e-mail address on your post (to which I have super-secret powerful access)? If this feels like an invasion your privacy, I won't. I'm an attorney and [sic] looking at getting deeply into these issues, having been sensitized to this through my involvement in Occupy OC."

103.    After learning more about Joe Roberts use of short sales with the mortgage broker side of his business, the 15 USC 1641g venture between Joe Roberts and Plaintiff quickly soured and it was terminated.

104.    It appeared that any confusion about Occupy legally representing Trang Che in court had been cleared up.

105.    However, on March 10, 2018 Plaintiff learned Defendant Greg Diamond was telling others, directly or indirectly, that he referred Trang Che to Plaintiff to save her home and that Ms. Albert botched it up. He wrote:

a. "Incumbent Republican malfeasor Tony Rackauckas, his former top aide turned longtime nemesis Todd Spitzer, former Brea Mayor and sane and stolid Democrat Brett Murdock, and woman with a recent track record of running for office to aide a powerful man from whom she then received professional favors Lenore Albert-Sheridan have all qualified for the ballot. (Miji John Vellakkatel did not enter the race.)"

**15**

**COMPLAINT**

Albert v Williams, et al

b.   "No word yet, as best I can determine, from the California Supreme Court about its accepting or rejecting the official recommendation for Lenore A-S's suspension from the practice of law, by the way. We will have so, so, *so* much more about Lenore A-S — and anyone foolish enough to have made arrangements with her — between now and June! We'll also publish all of her demand letters to take down items like this — please don't imagine that they're confidential, Lenore — although we'll probably save our public rebuttals for the anti-SLAPP motion."

c.   "Meanwhile, now that she's SUCH a public figure, *I'd* like to hear from anyone who hired Lenore AS to handle problems with their mortgages during the recent crisis — when I referred poor Occupy Orange County project Trang Che to her based on what I was told was Lenore A-S's good reputation — by people who later recanted. Note that nothing that Lenore A-S has done would justify anyone trying to take a paperweight or ashtray or whatever and throw it at her or try to hit her over the head with it — there are other, better, more legal ways to handle any grievances — which will also be discussed."

106.   Readers understood the "public figure" reference was to a recent unpublished decision made by the Court of Appeal in the case of Justice Protection Project v Xcentric Ventures, LLC.

107.   Readers understood that the "ashtray" reference was about a July 11, 2014 incident where convicted felon, George Olivo stormed into Plaintiff's office, picked up a statue and proceeded to try to hit Plaintiff over the head with it.  Like the Birther or Flat Earth movement, the Group of Defendants who knew George Olivo including Pam Ragland, Greg Diamond, Maegan Donovan, Cindy Brown, Sherry Hernandez and Sheri Moody have consistently denied the very real assault, even in the face of a long term protective order Ms. Albert obtained against George Olivo.

108.   Plaintiff demanded a retraction from Greg Diamond. In an email to Plaintiff and others, Greg Diamond explained that the "powerful man" he was referring to was current Orange County District Attorney Tony Rackauckus.

109.   Plaintiff was not assisting any powerful man in her run for District Attorney including, but not limited to Tony Rackauckus.

**16**

**COMPLAINT**

Albert v Williams, et al

110.   Additionally, Greg Diamond did not refer Trang Che to Plaintiff's law office for representation. The occupation of Oakland, California (the first Occupy site) was not even planned until September 26, 2011 which was five (5) days after Ms. Albert filed Tran Che's complaint. The Oakland occupation occurred before Occupy Irvine or Occupy Orange County was formed.

111.   Also, Plaintiff was assaulted with a statue by George Olivo on July 11, 2014 at her law office when he stormed into her office in a rage.

112.   On or about March 10, 2018, Plaintiff demanded Greg Diamond retract his statements because they were untrue and placing her in a false light, but he refused.

113.   Then on March 16, 2018 Greg Diamond's fellow Orange Juice blogger, Vern Nelson followed up with a new blog on the late Friday afternoon asserting Plaintiff was suspended from practicing law.

114.   After announcing Ms. Albert was suspended from practicing law implying it was due to a number of "victims" she had hurt in her legal profession, Vern Nelson published the following:

   a.   "She made her mark, hurt the most people under the guise of helping them, and got into the most trouble, during the rash of illegal foreclosures earlier in this decade, when Occupy got involved. But, despite the nice-charitable-girl image she cultivated, she almost never worked *pro bono*, unless there was some great publicity to be gained. Why is she now running for OC District Attorney."

115.   Joanne Kennedy aided and abetted Vern Nelson in his defamation against Plaintiff. She wrote: "Rip Mrs. Kilgore and Koshak family I hope you get some solace"

116.   However, the State Bar "sanction" was due to Koshak's failure to pay a discovery sanction of attorney fees in Unlawful Detainer court to hard money lenders Gary Schneider, Francis B. Lantieri and 10675 S Orange Park Acres, LLC. The State Bar complaint was not filed by Ms. Albert's clients Helen and Norman Koshak, it was a complaint brought by opposing counsel, attorney Phil Green, representing lenders Gary Schneider, Francis B. Lantieri and 10675 S Orange Park Acres, LLC.

**17**

**COMPLAINT**

Albert v Williams, et al

117.   Defendants Pam Ragland, Maegan Donovan aka Maegan Nikolic, Greg Diamond aided and abetted Vern Nelson pushed the post up to the first page of Google by making a series of comment on the article.

118.   Pam Ragland wrote

119.   This "attorney" Lenore Albert Sheridan who is no longer entitled to practice in CA — but is RUNNING FOR DA IN OC — has cost me more than $40K, fighting a false defamation claim against her. We just won in appeals court. Of course that cost me more money. When she realized she would have to pay my fee award, Yelp, and Ripoff report fee awards — she filed for Chapter 13 Bankruptcy just this March, 2018. When she got her car repossessed by Ford Motor Company, she blamed me and others stating we "broke into her computer" and somehow did something or another to make her car not registered in CA for 3 years (oh sorry, she did not admit that!!) and somehow messed up her payments. Yet, Ford is moving for Relief from Stay in her Chapter 13 Bankruptcy for the JUDGMENT they have against her for…WAIT FOR IT … not registering a vehicle brought from Nevada into CA for 3 years, among other payment related issues. You need only read Yelp and Ripoff report to see what her clients think of her. (Oh wait — after being sued the did hide some of those… well clients, feel free to speak up here!!) When the Bar first took action against her, Lenore sued the Bar so she could claim any future action was retaliation. She lost. They started taking action. Here we are literally YEARS later and the first of multiple actions has FINALLY been taken. So here you have a woman with many unhappy clients, who has cheated the state of CA by not registering her car, who has cheated Ford by not following their payment rules to the extent they repossessed her unregistered for 3 years vehicle, who filed a defamation lawsuit against people like me speaking out about her and attorneys who had gotten sanctions against her (and lost), who filed for Bankruptcy and who is suspended by the Bar for misconduct. (Oh, she blamed that on her clients, too. Are you kidding me?)

120.   Readers understood that these statements were about Plaintiff because she was the only candidate running for District Attorney named "Lenore" and Vern Nelson took a photo of Plaintiff and put it on the blog posting.

**18**

**COMPLAINT**

Albert v Williams, et al

121.    Due to the facts and circumstances known to the reader(s) of the statement(s), they tended to injure Plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

122.    Pam Ragland failed to use reasonable care to determine the truth or falsity of the statement(s) about the status of the JPP case against her or whether the Koshaks filed a complaint against Ms. Albert.

123.    These statements were false. In fact, Pam Ragland is still a defendant in the JPP case. The court of appeal did not determine that statements made by Pam Ragland in 2014 were true and Ms. Albert filed for Chapter 13 bankruptcy protection on February 20, 2018 which was before March 6, 2018, the dates that the court of appeal opinion.  Pam Ragland knew this last statement was absolutely false because she was a creditor listed in the Bankruptcy petition. Ms. Albert was prevented from receiving title from Ford so she could not register her vehicle which Pam Ragland had knowledge of.

124.    Maegan Donovan then took the posting and shared it to a Facebook event set up at Santa Ana college for a candidate debate on the District Attorney race which Ms. Albert was participating in.

125.    Mary Smith participated in the defamation by making a separate post on or about March 16, 2018 in the Candidate Forum event page " Candidate Lenore Albert is publicly stating she intends to sue the County of Orange due to her ballot designation. She has also sued the Orange County Sheriff, the Calif. State Bar, Yelp, Lexis Nexus, the list goes on and on. When I asked her [sic] how many of those cases she has won and what is the status of her license to practice law with all of the sanctions & disciplinary actions [sic] currently pending against her, she deleted my comment and blocked me."

126.    Meagan Donovan followed up with another post or about March 16, 2018 "How does one become a DA without a license – where do I apply! LOL" as a caption to her post she shared.

127.    Readers on the event page understood that these statements were about Plaintiff because she was the only candidate running for District Attorney named "Lenore" and Vern Nelson took a photo of Plaintiff and put it on the blog posting.

**19**

**COMPLAINT**

Albert v Williams, et al

128.   Due to the facts and circumstances known to the reader(s) of the statement(s), they tended to injure Plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

129.   Maegan Donovan and Mary Smith failed to use reasonable care to determine the truth or falsity of the statement(s).

130.   These statements were false.

131.   Greg Diamond also wrote on or about March 16, 2018 in the comment section of the Blog: "Can you be DA if your law license is suspended? That's a very good question. Seems like the answer should be "no," right?"

132.   Readers understood that these statements were about Plaintiff because she was the only candidate running for District Attorney named "Lenore" and Vern Nelson took a photo of Plaintiff and put it on the blog posting.

133.   Due to the facts and circumstances known to the reader(s) of the statement(s), they tended to injure Plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

134.   Greg Diamond failed to use reasonable care to determine the truth or falsity of the statement(s).

135.   These statements were false.

136.   In fact Ms. Albert's full State Bar membership profile showed that Ms. Albert "Had no history of Administrative Actions" at that point in time and that the case was still "pending."

137.   Ms. Albert had not received any written notice that she had been suspended on February 14, 2018 or March 16, 2018 from the probation office either.

138.   This statement was first published in print media by Vern Nelson on March 16, 2018. (Exhibit A)

139.   Others understood that these statements were about Plaintiff because she was the only candidate running for District Attorney named "Lenore" and Vern Nelson took a photo of Plaintiff and put it on the blog posting.

**COMPLAINT**

Albert v Williams, et al

140.   Due to the facts and circumstances known to the [listener(s)/reader(s)] of the statement(s), they tended to injure Plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

141.   Vern Nelson failed to use reasonable care to determine the truth or falsity of the statement(s) about the suspension and effect on the District Attorney's race.

142.   These statements were false. On March 15, 2018 Plaintiff looked up her State Bar record and there was no suspension effective February 14, 2018 on her membership page. She had not received a letter from the State Bar probation office stating she was suspended effective February 14, 2018. Moreover, the webpage was contradictory in that it maintained Ms. Albert had no prior administrative action taken against her. Yet, Vern Nelson did not disclose that portion of the webpage in his article or the photos he placed there.

143.   Defendant Greg Diamond adopted the statements of Vern Nelson and aided and abetted in the Defamation published on March 16, 2018.

144.   Defendant Greg Diamond has failed and refused to retract or correct the statements made on his blog on March 10, 2018 and Greg Diamond and Vern Nelson failed and refused to retract or correct the statements made on their blog on March 16, 2018. The statements are still out there, widely disbursed in the public due to Greg Diamond and Vern Nelson's false blog postings of March 10, 2018 and March 16, 2018, and their adoption of statements made by each other and others.

145.   As a result, Plaintiff suffered harm to her property, business, profession or occupation including money spent as a result of the statements. Plaintiff is informed and believes and alleges thereon that as a result Defendants have initiated a campaign to have her uninvited to the Candidate Forum on March 21, 2018 for the election of the next District Attorney in Orange County, California as a result of these statements. She also suffered public humiliation, reputation damage, shame, and emotional distress including mental suffering, anxiety and humiliation.

146.   The statements made by Vern Nelson, Greg Diamond and aider/abettors Joann Kennedy, Mary Smith, Maegan Donovan, Pam Ragland and republished by various others were a substantial factor in Plaintiff's harm.

**21**

**COMPLAINT**

Albert v Williams, et al

147. In making the statement(s), Greg Diamond, Vern Nelson and aider/abettors Maegan Donovan, Pam Ragland acted with hatred or ill will toward her, showing these particular defendants willingness to vex, annoy, or injure her.

148. Plaintiff is informed and believes and alleges thereon Greg Diamond, Vern Nelson and aider/abettors Joann Kennedy, Mary Smith, Maegan Donovan and Pam Ragland are intentionally defaming her in order to make Plaintiff appear not only unelectable as District Attorney, but as someone who was unethical and being held accountable by the State Bar for hurting her own clients who were facing foreclosure when in fact the entire State Bar case was about her clients who were facing foreclosure failed to pay discovery sanctions and the lenders complained to the State Bar that they did not get paid, thus entitling her to punitive damages.

149. Alternatively, Greg Diamond who is an attorney, Vern Nelson, and aider/abettors Mary Smith, Joanne Kennedy, Pam Ragland and Maegan Donovan had no reasonable grounds for believing the truth of the statement(s) they made.

150. Plaintiff is entitled to injunctive relief.

151. Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

152. The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION
### DEFAMATION Plus 42 USC 1983
**(Against Defendants State Bar Employee, Maricruz Farfan, Alex Hackert, Timothy Byer)**

153. Plaintiff incorporates the paragraphs 1 through 148 as though fully set forth herein.

154. Defendant State Bar employee went onto the State Bar website to Ms. Albert's membership profile and wrote "not eligible to practice law," "inactive" and "effective February 14, 2018."

155. These statements were false. Defendant was acting in his or her individual capacity.

**22**

**COMPLAINT**

Albert v Williams, et al

156.   Ms. Albert had not received any written notice that she had been suspended on February 14, 2018 or March 16, 2018 from the probation office either.

157.   This statement was first published in print media on March 16, 2018.

158.   Others understood that these statements were about Plaintiff because her name was on the page clearly identifying her.

159.   Due to the facts and circumstances known to the [listener(s)/reader(s)] of the statement(s), they tended to injure Plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame, and to discourage others from associating or dealing with her.

160.   State Bar employee failed to use reasonable care to determine the truth or falsity of the statement(s) about the suspension and effect on her law practice, her clients or the District Attorney's race.

161.   These statements were false. On March 15, 2018 Plaintiff looked up her State Bar record and there was no suspension effective February 14, 2018 on her membership page. She had not received a letter from the State Bar probation office stating she was suspended effective February 14, 2018.

162.   Defendants Probation officer, Alex Hackert, and Tim Byer aided and abetted the State Bar employee in defaming Ms. Albert on March 16, 2018.

163.   Ms. Albert reached out to Probation officer, Alex Hackert, and Tim Byer and demanded an explanation. Only Probation officer responded after repeated demands and several days later with no explanation whatsoever.

164.   Defendant Maricruz Farfan, Alex Hackert, and Tim Byer have failed and refused to retract or correct the statements made on March 16, 2018.  The statements are still out there, widely disbursed in the public due to the false posting made by State Bar employee on March 16, 2018, and their adoption of statements made by each other and others.

165.   As a result, Plaintiff suffered harm to her property, business, profession or occupation including money spent as a result of the statements. Plaintiff is informed and believes and alleges thereon that as a result co-defendants have initiated a campaign to have her uninvited to the Candidate Forum on March 21, 2018 for the election of the next District Attorney in Orange County, California as a

result of these statements. She also suffered public humiliation, reputation damage, shame, and emotional distress including mental suffering, anxiety and humiliation.

166.   The statements made by State Bar employee and republished by various others were a substantial factor in Plaintiff's harm.

167.   In making the statement(s), State Bar employee and aider/abettors Probation officer, Alex Hackert, and Tim Byer acted with hatred or ill will toward her, showing these particular defendants willingness to vex, annoy, or injure her.

168.   Plaintiff is informed and believes and alleges thereon Defendants State Bar employee, Maricruz Farfan, Alex Hackert, and Tim Byer are intentionally defaming her in order to assist the extremists, thus entitling her to punitive damages.

169.   Alternatively, State Bar employee, Maricruz Farfan, Alex Hackert, and Tim Byer had no reasonable grounds for believing the truth of the statement(s) they made.

170.   Plaintiff is entitled to injunctive relief.

171.   Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

172.   The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**SIXTH CAUSE OF ACTION**

**FALSE LIGHT**

**Against Defendants State Bar Employee**

173.   Plaintiff incorporates paragraphs 1 through 167 as though fully incorporated herein.

174.   Defendant State Bar employee made it appear to some that Ms. Albert was suspended from practicing law on or about February 14, 2018.

175.   In publicizing this information on the State Bar website about Plaintiff, it put her in a false light to others.

**24**

**COMPLAINT**

Albert v Williams, et al

176.    Defendants State Bar employee publicized the information either by communicating it to the public at large or to so many people that the information or material was substantially certain to become public knowledge.

177.    The false light created by the publication would be highly offensive to a reasonable person in Plaintiff's position.

178.    Defendant State Bar employee knew the publication would create a false impression about Plaintiff or acted with reckless disregard for the truth; or Defendant State Bar employee was negligent in determining the truth of the information or whether a false impression would be created by its publication.

179.    As a direct and proximate result of the false light, Plaintiff was harmed.

180.     Plaintiff sustained harm to her property, business, profession, or occupation, including money spent as a result of the statement(s); and Defendant State Bar employee's conduct was a substantial factor in causing Plaintiff's harm.

181.    Plaintiff is entitled to injunctive relief.

182.    Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

183.    The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### SEVENTH CAUSE OF ACTION

### FALSE LIGHT

**(Against Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joann Kennedy, Maegan Donovan Nikolic and Does 1 through 50)**

184.    Plaintiff incorporates paragraphs 1 through 148 as though fully incorporated herein.

185.    As laid out in the defamation cause of action above, Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan Nikolic aka Maegan Nikolic

**25**

**COMPLAINT**

Albert v Williams, et al

aka Meagan Donovan publicized information or material that showed Plaintiff in a false light. For example, part of the story made it appear that Plaintiff's clients, the Koshaks had filed State Bar complaint against Ms. Albert. However, it was their opposing counsel while they were in litigation that filed the complaint.

186.   Defendants also made it appear Ms. Albert was being paid by her clients and that she was not performing. However, Ms. Albert stopped approximately 1,000 foreclosure sales from occurring without receiving one dime in early 2011.

187.   Plaintiff is informed and believes and alleges thereon that the Defendants encouraged Ms. Albert's clients not to pay her for her services.

188.   Does 1 through 50 aided and abetted Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan in publicizing information about Plaintiff to put her in a false light to others.

189.   Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan publicized the information either by communicating it to the public at large or to so many people that the information or material was substantially certain to become public knowledge.

190.   The false light created by the publication would be highly offensive to a reasonable person in Plaintiff's position.

191.   Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan knew the publication would create a false impression about Plaintiff or acted with reckless disregard for the truth; or Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan was negligent in determining the truth of the information or whether a false impression would be created by its publication.

192.   As a direct and proximate result of the false light, Plaintiff was harmed.

193.    Plaintiff sustained harm to her property, business, profession, or occupation, including money spent as a result of the statement(s); and Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan conduct was a substantial factor in causing Plaintiff's harm.

**26**

**COMPLAINT**

Albert v Williams, et al

194.    Plaintiff is entitled to injunctive relief.

195.    Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

196.    The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## EIGHTH CAUSE OF ACTION

## FALSE LIGHT

**(Against Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joann Kennedy, Maegan Donovan Nikolic and Does 1 through 50)**

197.    Plaintiff incorporates paragraphs 179 through 191 as though fully incorporated herein.

198.    Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan Nikolic publicized information or material that showed Plaintiff in a false light. For example, they made it appear that Ms. Albert made threats directed at others that she would decapitate them.

199.    Does 1 through 50 aided and abetted Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan Nikolic in publicizing information about Plaintiff to put her in a false light to others.

200.    Plaintiff first learned of this in or about April 2017 on a CADEM Delegate Facebook group for delegates which contained over 1,000 members.

201.    Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan publicized the information either by communicating it to the public at large or to so many people that the information or material was substantially certain to become public knowledge.

202.    On March 16, 2018 Vern Nelson posted on the phone of Lenore Albert which he attached to his Suspension Blog post on the Orange Juice blog.

**COMPLAINT**

Albert v Williams, et al

203.   On March 18, 2018 Maegan Donovan posted a letter date stamped from the Law office of Glickman & Glickman and a TRO hearing in front of Robie & Matthai's former associate, judge Ricco to the OC DA Facebook event forum page at or about the same time as Vern Nelson published his Blog post.

204.   Plaintiff never directly threatened to decapitate anyone.

205.   Steve Glickman did not give Maegan Donovan, Greg Diamond or Vern Nelson the letter he had.

206.   The false light created by the publication would be highly offensive to a reasonable person in Plaintiff's position.

207.   Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan knew the publication would create a false impression about Plaintiff or acted with reckless disregard for the truth; or Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan was negligent in determining the truth of the information or whether a false impression would be created by its publication.

208.   As a direct and proximate result of the false light, Plaintiff was harmed.

209.   Plaintiff sustained harm to her property, business, profession, or occupation, including money spent as a result of the statement(s); and Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan conduct was a substantial factor in causing Plaintiff's harm.

210.   Plaintiff is entitled to injunctive relief.

211.   Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

212.   The aforementioned conduct of Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant(s) with the intention on the part of the Defendant(s) of thereby depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**NINTH CAUSE OF ACTION**

**28**

**COMPLAINT**

Albert v Williams, et al

**TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE**

(Against Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan Nikolic and Does 1 through 50)

213.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 207 as though set forth in full herein.

214.   Plaintiff and Felipe Gonzalez had been in an attorney-client relationship that probably would have resulted into an economic advantage to Plaintiff.

215.   Felipe Gonzalez terminated his relationship with Ms. Albert.

216.   Just prior to Plaintiff being terminated, Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan knew Plaintiff obtained a settlement offer of $100,000.00 cash plus a principal reduction and loan modification offered to Felipe Gonzalez from JPMorgan Chase Bank.

217.   However, after Ms. Albert's termination Felipe Gonzalez, disabled and unable to make his regular mortgage payments still holds title in his home and it is not in foreclosure. His home is worth approximately $500,000.00 and is located at 14229 Tiara Street, Van Nuys, California. As such, Plaintiff is informed and believes and alleges thereon that Felipe Gonzalez and JPMorgan Chase Bank settled the foreclosure dispute behind Ms. Albert's back, thereby cutting her out of the deal.

218.   Plaintiff is informed and believes and alleges thereon that Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan offered, gave, received or solicited, directly or indirectly, something of value to influence improperly the actions of another party resulting in Plaintiff being prevented from earning her contingency fee by Felipe Gonzalez refusing to take the settlement offer and later the bank and Felipe Gonzalez concealing their later settlement of the dispute.

219.   Does 1 through 50 aided and abetted Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan in his tortious interference.

220.   Plaintiff is informed and believes and alleges thereon that Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan has used other

**29**

**COMPLAINT**

Albert v Williams, et al

attorneys or people associated with Occupy to intimidate Felipe Gonzalez in order to get results he wants.

221.   By engaging in this conduct, Defendant intended to disrupt this relationship or knew that disruptions of this relationship between Plaintiff and Felipe Gonzalez was certain to occur.

222.   The relationship was disrupted.

223.   Plaintiff is informed and believes and alleges thereon that Felipe Gonzalez received the $100,000.00 cash plus principal reduction loan modification after Plaintiff was terminated as his attorney.

224.   Plaintiff was harmed because she was never received her commission on the $100,000.00 cash plus principal reduction loan modification settlement offered to Felipe Gonzales.

225.   Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan, were a substantial factor in causing that harm.

226.   Plaintiff is entitled to injunctive relief.

227.   Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

**TENTH CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, George Olivo, Sheri Moody, Cynthia L Brown, Joanne Kennedy, and Maegan Donovan and Does 1 through 50)**

228.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 222 as though set forth in full herein.

229.   Plaintiff and Steve Ballard had been in an employment relationship that probably would have resulted into an economic advantage to Plaintiff.

230.   Just prior to Plaintiff being terminated, Defendants Cynthia L Brown, George Olivo, Sheri Moody, Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan knew Steve Ballard and asked him to join them in their disparagement of Plaintiff to try to "take her down."

**30**

**COMPLAINT**

Albert v Williams, et al

231.   Plaintiff is informed and believes and alleges thereon that thereafter Steve Ballard stopped paying attorney fees to Ms. Albert for her representation of him on appeal.

232.   Defendants George Olivo, Cindy Brown, Monica Jones, Sheri Moody, Pam Ragland and at least two others connived their way into having Ms. Albert's vehicle towed from the courthouse parking lot on or about April 6, 2015.

233.   Thereafter, Ms. Albert sent Steve Ballard a text message demanding some sort of payment from him.

234.   On or about April 12, 2015 Steve Ballard threatened Lenore Albert that if she pressed him for payment he would join the "tin hats" a name Steve Ballard reserved for the CLOA, AXJ, Cal 18 and OFF defendants.

235.   Ms. Albert refused to back down and the relationship was terminated.

236.   Thereafter the Ninth Circuit appellate panel announced it received notice that Steve Ballard obtained a settlement offer from Bank of America.

237.   Neither Steve Ballard nor Bank of America informed Ms. Albert of this settlement. It happened behind her back.

238.   Steve Ballard's long term, live in girlfriend, Catherine Olsen joined the co-defendants and made a defamatory post on Yelp asserting Ms. Albert lost their home.

239.   In fact, Steve Ballard still owns the home worth now about $1,000,000.00 and is located at 5331 Rosecrest Drive, Huntington Beach, California as of the date of filing this complaint, three years later.

240.   Plaintiff is informed and believes and alleges thereon that Defendants Greg Diamond, Vern Nelson, Mary Smith, Pam Ragland, Joanne Kennedy, and Maegan Donovan offered, gave, received or solicited, directly or indirectly, something of value to influence improperly the actions of another party resulting in Plaintiff being prevented from earning her fees owed in representing Steve Ballard on multiple actions or the contingency fee on the case of Ballard v Bank of America.

241.   Does 1 through 50 aided and abetted Defendants Cindy Brown, Sheri Moody, George Olivo, Pam Ragland, Joanne Kennedy, and Maegan Donovan in his tortious interference.

**31**

**COMPLAINT**

Albert v Williams, et al

242.   Plaintiff is informed and believes and alleges thereon that Defendants Cindy Brown, Sheri Moody, George Olivo, Pam Ragland, Joanne Kennedy, and Maegan Donovan has used other attorneys or people associated with Occupy to intimidate Felipe Gonzalez in order to get results he wants.

243.   By engaging in this conduct, Defendant intended to disrupt this relationship or knew that disruptions of this relationship between Plaintiff and Felipe Gonzalez was certain to occur.

244.   The relationship was disrupted.

245.   Plaintiff is informed and believes and alleges thereon that Felipe Gonzalez received the $100,000.00 cash plus principal reduction loan modification after Plaintiff was terminated as his attorney.

246.   Plaintiff was harmed because she was never received her commission on the $100,000.00 cash plus principal reduction loan modification settlement offered to Felipe Gonzales.

247.   Defendants and each of them were a substantial factor in causing that harm.

248.   Plaintiff is entitled to injunctive relief.

249.   Plaintiff is also entitled to recover her costs of suit, including a reasonable attorney's fees, if not by contract, then under CCP 1021.5.

## ELEVENTH CAUSE OF ACTION
## ATTEMPTED EXTORTION

(Against Defendant Steve Ballard, Catherine Olsen and Does 1 through 50)

250.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 244 as though set forth in full herein.

251.   On April 12, 2015 Steve Ballard threatened Plaintiff Lenore Albert that if she did not work for them for free and stop pressing for payment for her legal services that they would join the Tin Hats and attack her.

252.   On April 13, 2015, Steve Ballard's girlfriend, Catherine Olsen wrote that Ms. Albert lost her home and gave her a one-star review.

253.   Ms. Albert filed her motion to withdraw.

**32**

**COMPLAINT**

Albert v Williams, et al

254.  On June 8, 2015 the Ninth Circuit Court of Appeal granted Ms. Albert's motion to withdraw as attorney of record based on conflict of interest.

255.  On June 12, 2015 Steve Ballard sent the Ninth Circuit Court of Appeal a defamatory letter about Ms. Albert with the intent to disparage her name in the eyes of the court.

256.  The letters and filings were intentional not to try to convince the court of anything but to be used outside of court to others with the shield of privileged communications and purported legitimacy of the statements because they were filed of which Sheryll Alexander said she was going to make a book from.

257.  (a) Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right.

258.  On April 12, 2015, Defendant Steve Ballard sent or delivered to the plaintiff written correspondence.

259.  Steve Ballard's writing expressed or implied a threat listed in section 519. The written correspondence threatened to do an unlawful injury to the person or property of the individual threatened or of a third person by stating he was going to join the "tin hats" which included Karen Rozier, George Olivo, and Maegan Donovan who had been sending Ms. Albert threats of bodily injury; or accuse Ms. Albert of a crime or expose, or to impute to her, a deformity, disgrace, or crime because the "tin hats" had been taking to social media, Yelp and Rip Off Report posting fake reviews to disparage Ms. Albert in her profession.

260.  Defendant Steve Ballard intended to extort money or property from the plaintiff.

261.  When Plaintiff refused to continue working for Steve Ballard for free he joined the "tin hats."

262.  Plaintiff is informed and believes and alleges thereon that Steve Ballard contacted George Olivo because a video went out that same day (April 12, 2015) with George Olivo telling others that Ms. Albert hurts homeowners and he and William Wagener called for a Sovereign Citizen Common Law Grand Jury to be held for Ms. Albert's purported crimes.

**33**

**COMPLAINT**

Albert v Williams, et al

263. On April 12, 2015 Defendants Cindy Brown and Sheri Moody uploaded videos to the internet to mock Ms. Albert which showed them having her vehicle towed from the Orange County Superior Courthouse on April 6, 2015.

264. Also, his girlfriend Catherine Olsen post a fake and false review on Yelp on April 13, 2015. The Sovereign Citizen group used the posting of fake and false reviews on Yelp as part of their modus operandi as of July 2014.

265. Defendants Rene Powers and Cindy Brown hopped on William Wageners show on April 20, 2015 calling out Ms. Albert and the California Attorney General's office. Then William Wagener asked if it was time to call a Common Law Grand Jury against Ms. Albert.  It was stated that there were a few more things to do first. William Wagener then re-aired his George Olivo clip asking for a Common Law Grand Jury against Ms. Albert at the end.

266. Defendant Ballard then apparently wrote the State Bar, another part of the Sovereign Citizen plan and the Ninth Circuit Court of Appeal and told the court untrue disparaging things about Ms. Albert.

267. As a result of Defendant Steve Ballard's threat, the plaintiff suffered harm; and

268. The harm suffered by plaintiff was caused by Defendant Steve Ballard.

## TWELTH CAUSE OF ACTION
## ATTEMPTED EXTORTION
### (Against Defendant Nira Woods and Does 1 through 50)

269. Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 46 as though set forth in full herein.

270. On or about February 5, 2016 Dr. Nira Woods walked into Ms. Albert's law office with a large yellow envelope. Ms. Albert had represented Dr. Woods in a fraud case against UC Regents wherein Dr. Woods won approximately $136,750.00 at jury trial. Ms. Albert took the case on contingency and the check was being cut by the Defendants.

271. Dr. Woods opened up the envelope and pulled out a copy of Notice of Disciplinary Charges filed by the State Bar against Ms. Albert and plopped it in front of Ms. Albert at her desk. Dr. Woods said in a stern voice she wanted to talk about costs.

**34**

**COMPLAINT**

Albert v Williams, et al

272. Dr. Woods then said she made some calculations and pulled out a second piece of paper with calculations on it and kept it in her hand.

273. Plaintiff told Dr. Woods what she believed the apportionment should be. Dr. Woods face changed. Dr. Woods put her paper quickly back in the envelope, her voice changed from stern to cheerful and she agreed to the apportionment Plaintiff proposed as consistent with the terms of the agreement.

274. Plaintiff escorted Dr. Woods to Plaintiff's bank with IOLA account where they both endorsed the check as Plaintiff deposited it. Plaintiff then cut Dr. Woods a $80,504. 24 check on February 10, 2016 in the agreed apportionment.

275. Shortly thereafter, Dr. Woods told Plaintiff she had not lived up to her contract because Dr. Woods did not get her husband's organs back.

276. On April 1, 2016 Nira Woods threatened Plaintiff Lenore Albert that she would expose Lenore Albert as an attorney who took $20,000.00 on a patent litigation matter without performing the litigation if she did not get her deceased husband's organs back from UCLA and have a certain group of UCLA nurses and doctors fired.

277. Does 1 through 50 aided and abetted Nira Woods in carrying out her threats.

278. Plaintiff refused to cave into Dr. Woods' demands.

279. Dr. Woods filed the false complaint with the State Bar of California which then subpoenaed Ms. Albert's bank accounts and filed charges against her for the purported failure to represent Dr. Woods in the patent litigation.

280. Steve Ballard's writing expressed or implied a threat listed in section 519.

281. The written correspondence by Dr. Woods on or about April 1, 2016 and thereafter threatened to accuse Ms. Albert of a crime or expose, or to impute to her, a deformity, disgrace, or crime.

282. Defendant Nira Woods intended to extort money or property from the plaintiff.

283. When Plaintiff refused to continue working for Nira Woods to obtain her husband's organs, file another lawsuit or file actions to have certain doctors and nurses licenses taken way, Dr. Woods filed her false State Bar complaint.

284. As a result of Defendant Nira Woods' threat, the plaintiff suffered harm; and

285.   The harm suffered by plaintiff was caused by Defendant Nira Woods.

## THIRTEENTH CAUSE OF ACTION

## EXTORTION

(Against Defendant Devin Lucas and Elen Caitlin-Morin)

286.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 45

287.   Defendant Devin Lucas is a realtor, attorney and joined the Occupy Fights Foreclosure enterprise on or before September 18, 2014.

288.   Defendant Elen Caitlin-Morin was a State Bar investigator acting under color of law and in her individual capacity. Her actions in this claim violated plaintiff's First and Fourteenth Amendment rights by depriving her of property under threat of force.

289.   On or about March 1, 2016 Devin Lucas demanded $900.00 from Ms. Albert for discovery sanctions in the case of Kent v Fin City Foods and reported her to the State Bar. The same State Bar investigator (Elen Caitlin-Morin) who prosecuted Ms. Albert for Koshak's failure to pay discovery sanctions demanded Ms. Albert pay Devin Lucas the discovery sanctions or else she would be prosecuted again.

290.    On or about March 1, 2016 Devin Lucas and Elen Caitlin-Morin threatened Plaintiff Lenore Albert that they would expose Lenore Albert as an attorney who was sanctioned by the court for $800.00 and disobeyed that court order if she did not immediately pay Devin Lucas approximately $800.00.

291.   Does 1 through 50 aided and abetted Devin Lucas and Elen Caitlin-Morin in carrying out their threats.

292.   Devin Lucas and State Bar Employee's writing expressed or implied a threat listed in section 519.

293.   The written correspondence by them on or about April 1, 2015 and thereafter threatened to accuse Ms. Albert of a crime or expose, or to impute to her, a deformity, disgrace, or crime, although according to the fee agreement she had with Bonnie Kent, any discovery sanctions should be paid by her as her sole responsibility.

**COMPLAINT**

Albert v Williams, et al

294.   Defendant Devin Lucas extorted money or property from the plaintiff. On or about March 16, 2016 Plaintiff sent off a series of checks totaling $875.00 to Devin Lucas thinking that this was the amount ordered.

295.   Then Bonnie Kent demanded reimbursement on the discovery sanction she never paid.

296.   Then State Bar employee prosecuted Ms. Albert for disobeying a court order because she paid Devin Lucas too much.

297.   Then Bonnie Kent filed a complaint with the State Bar. The State Bar waited until the Court of Appeal affirmed dismissal against Devin Lucas upon finding that there was no proof Bonnie Kent terminated the attorney-client relationship with Ms. Albert and as such no damages. After that, then the State Bar sent a letter to Ms. Albert that they were handling Bonnie Kent's complaint against Ms. Albert.

298.   As a result of Defendant Devin Lucas and Elen Caitlin-Morin threat, the plaintiff suffered harm; and the harm suffered by plaintiff was caused by Defendants Devin Lucas and State Bar Employee.

## FOURTEENTH CAUSE OF ACTION

## RICO

### Against All Defendants and Does 1 through 50

299.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 293 as though set forth in full herein.

300.   The Orange County Superior Court has been infiltrated by a new sovereign citizen tactic of having the extremists sign up as ADA Coordinators in an effort to hold Ken Starr ex parte hearings to disparage their targets, threaten and intimidate witnesses testifying and to act as a lawyer without a license.

301.   Sherry Hernandez, George Olivo, Sheri Moody and Cynthia L Brown have all been personally observed to use this system by Plaintiff. Sherry Hernandez and Cynthia L. Brown are using badges and have had Plaintiff kicked out of court via this pseudo status.

302.   It is advertised:

**37**

**COMPLAINT**

Albert v Williams, et al

a. *Cindy is the ADA administrative coordinator for California, she oversees the public servants and courts, with great reluctance and push back from both. She has gone through extensive training under Dr. Karen Huffer and through the thousands of hours in research and completion of these classes her dedication to saving our homes is unmatched. Here Dr. Huffer explains "Legal Abuse Syndrome" and why tramatized clients need the ADA with them in the courtroom.*
*https://lovefraud.com/dr-karin-huffer-explains-why-the-traumatized-clients-in-court-need-the-ada/*

## THE ENTERPRISES:

303.   **Cal18**

304.   An enterprise called the Cal18 existed.

305.   The Cal18 enterprise affected interstate commerce by assisting in foreclosure rescue scams throughout the United States.

306.   Defendant Rene Powers, Pam Ragland, Valerie Lopez, Cynthia L Brown, William Wagener and Monica Jones were associated with or employed by the Cal18 enterprise.

307.   Defendants engaged in a pattern of racketeering activity.

308.   Defendants conducted or participated in the conduct of the Cal18 enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

309.   **Common Law Offices of America**

310.   An enterprise called the Common Law Offices of America existed;

311.   The Common Law Offices of America enterprise affected interstate commerce by assisting in foreclosure rescue scams throughout the United States.

312.   Defendant Anthony Troy Williams was associated with or employed by the Common Law Offices of America enterprise

313.   Defendant Anthony Troy Williams engaged in a pattern of racketeering activity

**38**

**COMPLAINT**

Albert v Williams, et al

314.     Defendant Anthony Troy Williams conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

315.     Defendant Cynthia ("Cindy") Brown was associated with or employed by the Common Law Offices of America enterprise.

316.     Defendant Cynthia ("Cindy") Brown engaged in a pattern of racketeering activity.

317.     Defendant Cynthia ("Cindy") Brown conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

318.     Defendant Rene Powers was associated with or employed by the Common Law Offices of America enterprise.

319.     Defendant Rene Powers engaged in a pattern of racketeering activity.

320.     Defendant Rene Powers conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

321.     Defendant George Olivo was associated with or employed by the Common Law Offices of America enterprise.

322.     Defendant George Olivo engaged in a pattern of racketeering activity.

323.     Defendant George Olivo conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

324.     Defendant Sheri Moody was associated with or employed by the Common Law Offices of America enterprise.

325.     Defendant Sheri Moody engaged in a pattern of racketeering activity.

326.     Defendant Sheri Moody conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

**COMPLAINT**

Albert v Williams, et al

327.    Defendant Valerie Lopez was associated with or employed by the Common Law Offices of America enterprise.

328.    Defendant Valerie Lopez engaged in a pattern of racketeering activity.

329.    Defendant Valerie Lopez conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

330.    Third party Paul Murray was associated with or employed by the Common Law Offices of America enterprise.

331.    Paul Murray engaged in a pattern of racketeering activity.

332.    Paul Murray conducted or participated in the conduct of the Common Law Offices of America enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

333.    **Equal Access Advocates:**

334.    An enterprise called the Equal Access Advocates existed.

335.    The Equal Access Advocates enterprise affected interstate commerce by assisting non-attorneys gain access to the courts throughout the United States in order to intimidate their victims and/or to advance their illegitimate goals of their other enterprise throughout the United States.

336.    Defendant Karin Huffer was associated with or employed by the Equal Access Advocates enterprise.

337.    Defendant Karin Huffer engaged in a pattern of racketeering activity.

338.    Defendant Karin Huffer conducted or participated in the conduct of the Equal Access Advocates enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

339.    Defendant Cynthia ("Cindy") Brown was associated with or employed by the Equal Access Advocates enterprise.

340.    Defendant Cynthia ("Cindy") Brown engaged in a pattern of racketeering activity.

**40**

**COMPLAINT**

Albert v Williams, et al

341.   Defendant Cynthia ("Cindy") Brown conducted or participated in the conduct of the Equal Access Advocates enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

342.   Defendant Sherry Hernandez was associated with or employed by the Equal Access Advocates enterprise.

343.   Defendant Sherry Hernandez engaged in a pattern of racketeering activity.

344.   Defendant Sherry Hernandez conducted or participated in the conduct of the Equal Access Advocates enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

345.   **Occupy Fights Foreclosures**

346.   An enterprise called Occupy Fights Foreclosures existed.

347.   The Occupy Fights Foreclosures enterprise affected interstate commerce by assisting non-attorneys gain access to homeowners going through foreclosure to sell sovereign citizen type of materials and services affecting national banking throughout the United States.

348.   Defendant Cynthia ("Cindy") Brown was associated with or employed by the Occupy Fights Foreclosures enterprise.

349.   Defendant Cynthia ("Cindy") Brown engaged in a pattern of racketeering activity

350.   Defendant Cynthia ("Cindy") Brown conducted or participated in the conduct of the Occupy Fights Foreclosures enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

351.   Defendant Sherry Hernandez was associated with or employed by the Occupy Fights Foreclosures enterprise.

352.   Defendant Sherry Hernandez engaged in a pattern of racketeering activity.

353.   Defendant Sherry Hernandez conducted or participated in the conduct of the Occupy Fights Foreclosures enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

354.   Defendant Maegan Donovan aka Maegan Donovan Nikolic was associated with or employed by the Occupy Fights Foreclosures enterprise.

COMPLAINT

Albert v Williams, et al

355.     Defendant Maegan Donovan aka Maegan Donovan Nikolic engaged in a pattern of racketeering activity.

356.     Defendant Maegan Donovan aka Maegan Donovan Nikolic conducted or participated in the conduct of the Occupy Fights Foreclosures enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

357.     Defendant George Olivo was associated with or employed by the Occupy Fights Foreclosures enterprise.

358.     Defendant George Olivo engaged in a pattern of racketeering activity.

359.     Defendant George Olivo conducted or participated in the conduct of the Occupy Fights Foreclosures enterprise through that pattern of racketeering activity through the commission of at least two acts of racketeering activity as set forth herein.

360.     Defendant Joanne Kennedy ran with all Enterprises out of Pennsylvania offering online support through CAN; Defendant Greg Diamond and Vern Nelson associated with Occupy Enterprise and ran support through OrangeJuice Blog and also by contacting people through whisper campaigns; Defendant State Bar, Elen Caitlin-Morin, Maricruz Farfan, Steve Ballard, Nira Woods, Catherine Olsen, Alex Hackert, and Timothy Byer participated through the Occupy Fights Foreclosure Enterprise.

## PREDICATE ACTS

361.     18 USC §1341- Mail Fraud

362.     Defendants as more specifically alleged above, having devised or intending to devise any <u>scheme or artifice to defraud</u>, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do,

363.     Defendants placed said matter in the post office or authorized depository for mail to be sent or delivered by the Postal Service, or took or received therefrom, such matter, or knowingly causes to

be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

364.    18 USC §1343 – Wire Fraud

365.    Defendants, having devised or intending to devise any <u>scheme or artifice to defraud</u>, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

366.    In violation of 18 USC §1513(e) and (f), on or about May 2015 Defendant State Bar Employee, Cindy Brown, Sheri Moody, Valerie Lopez, Renee Powers, Anthony Troy Williams, George Olivo knowingly, with the intent to retaliate, took an action harmful to Plaintiff, by interfering with the lawful employment or livelihood of Plaintiff, for providing to a <u>law enforcement officer</u> any truthful information relating to the commission or possible commission of any Federal offense.

367.    On or about August 1, 2014 Defendant Sheri Moody, George Olivo, Maegan Nikolic, Pam Ragland, and/or Cindy Brown knowingly, with the intent to retaliate, took an action harmful to person Susan Augustus, by calling her employer at a Realty Company to get her fired thereby interfering with the lawful employment or livelihood of person Susan Augustus at Acme Realty Company, for providing to plaintiff Lenore Albert any truthful information relating to the commission or possible commission of any Federal offense which she would pass onto law enforcement, in violation of 18 USC §1513(e).

368.    From 2014 through the present Defendant Sheri Moody conspired with Defendant George Olivo, Maegan Nikolic, Pam Ragland and Cindy Brown to knowingly, with the intent to retaliate, took an action harmful to Plaintiff, including interference with the lawful employment or livelihood of Plaintiff, for providing to a <u>law enforcement officer</u> any truthful information relating to the commission or possible commission of any Federal offense, in violation of 18 USC §1513(f)

369.    In violation of 18 USC §1832, Defendant Norma White, with intent to convert a <u>trade secret</u>, that is related to plaintiff's law office practice used for cases in the Ninth Circuit, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure the plaintiff, who was the owner of that <u>trade secret</u>, knowingly **(1)** stole, or without

authorization appropriates, took, carried away, or concealed, or by fraud, artifice, or deception obtained such information; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; (3) received, bought, or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization by Defendant Norma White in violation of 18 USC §1832.

370.    Alternatively, Defendant Norma White, attempted to commit a theft of plaintiff's trade secrets in her law practice, with intent to convert a trade secret, that is related to plaintiff's law office practice used for cases in the Ninth Circuit, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure the plaintiff, who was the owner of that trade secret, knowingly (1) stole, or without authorization appropriates, took, carried away, or concealed, or by fraud, artifice, or deception obtained such information; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; (3) received, bought, or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization by Defendant Norma White in violation of 18 USC §1832.

371.    Alternatively, Defendant Norma White conspired with one or more other defendants such as Cindy Brown, Pam Ragland, Maegan Nikolic, Rene Powers, Sheri Moody and George Olivo to commit any offense in 18 USC §1832 with intent to convert a trade secret, that is related to plaintiff's law office practice used for cases in the Ninth Circuit, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure the plaintiff, who was the owner of that trade secret, knowingly (1) stole, or without authorization appropriates, took, carried away, or concealed, or by fraud, artifice, or deception obtained such information; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; (3) received, bought, or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization by Defendant Norma White in violation of 18 USC §1832.

**44**

**COMPLAINT**

Albert v Williams, et al

372.     On or about November 1, 2014 to the present Defendants Monica Jones and Cindy Brown intentionally trafficked in "OC Sheriff" labels, patches, stickers, wrappers, badges, emblems, medallions, hangtags, documentation, knowing that a counterfeit mark had been applied thereto, the use of which was likely to cause confusion, to cause mistake, or to deceive, or attempted or conspired to violate the above in violation of 18 USC §2320.

373.     Defendant Cindy Brown and Anthony Troy Williams, falsely assumed or pretended to be an officer or employee as a Private Attorney General acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demanded or obtained money, paper, document, or thing of value in violation of 18 USC §912.

374.     Defendant Cindy Brown and Anthony Troy Williams had Paul Murray, falsely assumed or pretended to be an officer or employee as a law enforcement office acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demanded or obtained money, paper, document, or thing of value in violation of 18 USC §912.

375.     In violation of 18 USC § 915 on or about November 1, 2014 to the present, Defendant Valerie Lopez with intent to defraud within the United States, falsely assumed or pretended to be a diplomatic, consular or other official of a foreign government duly accredited as such to the United States and acts as such, or in such pretended character, demands or obtains or attempts to obtain any money, paper, document, or other thing of value, from others to obtain the same or learn how to attain similar status at seminars.

376.     In violation of Cal Penal Code §115, on or about x, Defendants Anthony Troy Williams, Cindy Brown, Rene Powers, Sheri Moody and Valerie Lopez knowingly procured or offered false or forged instruments which were deeds of trust representing a priority position on real property and filed, registered, or recorded in the Orange County Recorders Office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, videotaped it and then published it on Youtube to further promote their homeowner rescue scams.

377.     In violation of Cal Penal Code §503,  Defendants Norma White and George Olivo embezzled (fraudulently appropriated) property that Plaintiff entrusted to them including but not limited to keys, access code passes, files and a laptop in or about April 2014 through July 2014.

378.     In violation of Cal Penal Code §518 Defendants State Bar Employee, Devin Lucas, Bonnie Kent, and Nira Woods attempted and/or extorted property from Plaintiff with her consent or obtained by an official act of a public officer, which was induced by a wrongful use of force or fear, or under color of official right.

379.     In violation of Cal Penal Code §470 Defendants Gary Schneider and Elizabeth Knight, with the intent to defraud, knowing that she had no authority to do so, signed the name of another person or of a fictitious person to a promissory note by photocopying Norman Koshak and Helen Koshak's signature page on another note with materially different terms in or about October 2012.

380.     In violation of Cal Penal Code §470 Defendants Sheri Moody, Cindy Brown, Valerie Lopez, and Rene Powers, with the intent to defraud, knowing that she had no authority to do so, falsely made, uttered, published, passed or attempted or offered to pass, as true and genuine, deed of trust and/or note and presented said documents to the Orange County Recorders' Office in or about November 2014.

381.     In violation of Cal Penal Code §653(f) Defendants Greg Diamond, George Olivo, Cindy Brown, Pam Ragland, Karen Rozier, Sheri Moody, Monica Jones and Sherry Hernandez, with the intent that the crime be committed, solicited another to offer, accept, or join in the offer or acceptance of a bribe, or to commit or join in the commission of grand theft, extortion, perjury, subornation of perjury, or by force, to prevent or dissuade any person who is or may become a witness from attending upon, or testifying at, any trial, proceeding, or inquiry authorized by law.

382.     In violation of Cal Penal Code §487 Defendant Norma White committed a grand theft on or about April 2014 by taking money, labor, or real or personal property from her employer, plaintiff in 2014 in the aggregate of nine hundred fifty dollars ($950) or more; .

383.     In violation of Cal Penal Code § 182 Defendants Pam Ragland and David Seal conspired to falsely and maliciously indict Plaintiff for any crime, or to procure another to be charged or arrested for any crime.

**46**

**COMPLAINT**

Albert v Williams, et al

384.    In violation of Cal Penal Code § 182 Defendants Jennifer Needs, Phil Green, David Seal, George Olivo, Sherry Hernandez, Pam Ragland, Soledad Corona, Karen Rozier, Sheri Moody and Sheryll Alexander conspired to falsely to move or maintain any suit, action, or proceeding.

385.    In violation of Cal Penal Code §530.5 Defendant Norma White obtained Plaintiff's social security number, birthdate and other personal identifying information and used that information for an unlawful purpose without the consent of Plaintiff.

## PATTERN OF RACKETEERING ACTIVITY

386.    The Defendants have engaged in a "pattern of racketeering activity," as defined by U.S.C. §1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations as listed above and incorporated herein, discovered within the past four years after being concealed by misrepresentations from Defendants.

387.    In fact, each of the Defendants have committed or aided and abetted in the commission of multiple acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiff.

388.    The multiple acts of racketeering activity that Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

## RICO VIOLATIONS

389.    Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

390.    Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the Equal Access Advocates Enterprise, Occupy Fights Foreclosure Enterprise, Cal 18 Enterprise, Action for Justice Enterprise, and the Common Law Office of America Enterprise.

**47**

**COMPLAINT**

Albert v Williams, et al

391.   Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

392.   Defendants' conspiracy to secure property and/or money from Plaintiff for their own use through the fraudulent scheme described above and then target and try to destroy her violates 18 U.S.C. §1962(d).

393.   Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the five (5) Enterprises through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and the other crimes listed above - and each Defendant so participated in violation of 18 U.S.C. §1962(c).

394.   Defendants used a scheme to defraud by means of false pretenses as particularly described in the causes of action above.

395.   Defendant's actions entitle Plaintiff to actual damages, treble damages, attorney's fees and costs against the private Defendants and injunctive relief against any state or local agency.

### COUNT 1
### VIOLATION OF RICO 18 U.S.C. §1962(c)

396.   Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 148 as though set forth in full herein.

397.   As set forth above, Defendants have violated 18 U.S.C. §1962(c) by conducting or participating directly or indirectly in the conduct of the affairs of the Common Law Offices of America Enterprise, Occupy Fights Foreclosure Enterprise, Action for Justice Enterprise, Cal 18 Enterprise and/or Equal Access Advocates Enterprise through a pattern of racketeering.

398.   As a direct and proximate result, Plaintiff has been injured in her business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

399.   The private Defendants' actions entitle Plaintiffs to actual damages, treble damages, attorney's fees and costs under 18 U.S.C. 1964. Plaintiff is entitled to injunctive relief against state or local agencies.

### COUNT II
### VIOLATION OF RICO 18 U.S.C. §1962(D)
### CONSPIRING TO VIOLATE 17 U.S.C. §1962 (C)

**48**

**COMPLAINT**

Albert v Williams, et al

400.   Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 153 as though set forth in full herein.

401.   As set forth above, in violation of 18 U.S.C. §1962(d), Defendants have, as set forth above, conspired to violate 18 U.S.C. §1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the five (5) Enterprises through a pattern of racketeering.

402.   As a direct and proximate result, Plaintiff has been injured in her business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

403.   Private Defendants' actions entitle Plaintiff to actual damages, treble damages, attorney's fees and costs under 18 U.S.C. 1964. Plaintiff is entitled to injunctive relief against state and local agencies.

### FIFTEENTH CAUSE OF ACTION
### UCL §17200 VIOLATION
### (Against Bank of America, N.A. and Public Storage)

404.   Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 158 as though set forth in full herein.

405.   Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

406.   Defendants, and each and everyone of them, from 2014 forward continue to have a policy and practice which violates federal and/or state law as alleged above and therefore constitutes unlawful business act or practice within the meaning of Cal Bus & Prof Code 17200.

407.   The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, all of the Defendants' practice constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

408.   Defendants, and each and everyone of them, from 2014 forward continue to deceive and mislead the general public by announcing they have court orders allowing the Los Angeles Police Department to evict homeowners and search and seize their personal property, when there is no valid search warrant and no arrest was made.

**49**

**COMPLAINT**

Albert v Williams, et al

409.    Defendants, and each and everyone of them, policy/practice in this entire scheme for profit as particularly laid out above, is likely to mislead the general public, and did mislead the general public, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

410.    As a direct and proximate result of Defendants' conduct, plaintiff was harmed in that she lost property and money in her business and her reputation was damaged. She was thwarted with continual obstacles in each of her election cycles and in her ability to practice law without government interference.

411.    As a result of the aforementioned acts, plaintiff has lost money or property and suffered injury in fact.

412.    Finally, stopping this practice furthers the public interest. Plaintiff is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

413.    Plaintiff is entitled to restitution and injunctive relief.

### SIXTEENTH CAUSE OF ACTION

### Aiding and Abetting Violation of §17200

### (Against All Defendants and Does 1 through 50)

414.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 408 as though set forth in full herein.

415.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

416.    Defendants and each of them including Doe 1 through 50 knew and were aware of their co-defendants' unlawful, unfair or deceptive business practices and untrue and misleading conduct alleged above but continued with the scheme for their own profit.

417.    Defendants aided and abetted/induced these violations by their co-defendants in that they commanded or conducted the conduct. For example, Defendant Anthony Troy Williams placed Plaintiff's photo on his CLOA Website said she was a scammer and solicited the public to file false reports with the State Bar for his own profit. If anyone crossed him, he would do the same to him.

### PRAYER FOR RELIEF

50

### COMPLAINT

Albert v Williams, et al

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

**First through Third, Fifth and Sixth Cause of Action**

1. For a preliminary and permanent injunction;
2. Damages from individuals;
3. Costs
4. Fees
5. Any further relief the court would deem appropriate and just.

**Fourth and Seventh through Tenth Causes of Action**

1. For a preliminary and permanent injunction;
2. For actual damages;
3. For general damages;
4. Costs;
5. Attorney fees;
6. Punitive Damages;
7. Any further relief the court would deem appropriate and just.

**Eleventh through Thirteenth Cause of Action**

1. For a preliminary and permanent injunction;
2. For actual damages;
3. For general damages;
4. Treble Damages;
5. Costs;
6. Attorney fees:
7. Any further relief the court would deem appropriate and just.

**Fourteenth Cause of Action**

1. For a preliminary and permanent injunction;
2. Restitution and/or damages;
3. Treble Damages;
4. Costs;

**51**

**COMPLAINT**

Albert v Williams, et al

5.  Attorney fees:

6.  Any further relief the court would deem appropriate and just.

**Fifteenth and Sixteenth Cause of Action**

1.  Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from committing any acts of unlawful, unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein

2.  Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants are ordered to restore to the general public all funds or property acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business & Professions Code §17200 et seq., or untrue or misleading advertising under §17500 et seq.

3.  Restitution;

4.  Disgorgement of profits;

5.  Costs;

6.  Attorneys' fees;

7.  Such other and further relief as this Court finds necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to those issues that are not equitable in nature.

Dated: March 21, 2018                 LAW OFFICES OF LENORE ALBERT

By: s/Lenore L. Albert_____
LENORE L. ALBERT, ESQ.
Plaintiff pro per

**52**

**COMPLAINT**

Albert v Williams, et al